**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

GLORIA SCOTT                                                                                                     Plaintiff

v.                                           5:10-CV-00017-JMM-JJV

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration,                                                                                      Defendant

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge James M. Moody. The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection. The objections must be filed with the Clerk no later than fourteen (14) days from the date of the findings and recommendations. A copy must be served on the opposing party. The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

### RECOMMENDED DISPOSITION

Plaintiff, Gloria Scott, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Supplemental Security Income (SSI), based on disability. Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an

1

opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Plaintiff alleged that she was limited in her ability to work by high blood pressure, arthritis, depression and back pain. (Tr. 108). The Commissioner found that she was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through June 3, 2009, the date of his decision. (Tr. 18). On November 27, 2009, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff then filed her complaint initiating this appeal. (Doc. No. 2).

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 48 years old at the time of the hearing. (Tr. 23). She testified that she completed the ninth grade in school. (Tr. 113). On her adult disability report, she indicated that she completed two years of college. (Tr. 113). She has no past relevant work. (Tr. 39, 109, 129-31).

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i) (2008). If the claimant is, benefits are

denied, regardless of medical condition, age, education or work experience. *Id.* § 416.920(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. *Id.* § 416.920(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.* § 416.920(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment. *Id.* § 416.920(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. *Id.*

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. *Id.* § 416.920(a)(4). This residual functional capacity assessment is utilized at Steps 4 and 5. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id.* § 416.920(a)(4)(iv). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.* § 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id.*

The ALJ found Plaintiff had not engaged in substantial gainful activity since her application date.[1] (Tr. 12). He found Plaintiff had "severe" impairments, osteoarthritis in the right knee, back pain, obesity and depression. *Id.* He found she did not have an impairment or combination of impairments that met or equaled a Listing. *Id.* He judged that Plaintiff's allegations regarding the intensity, persistence and limiting effects of her symptoms were not credible to the extent alleged. (Tr. 14).

The ALJ found Plaintiff retained the residual functional capacity for sedentary work which allowed for alternating among sitting, standing and walking; required no more than occasional

---

[1] Plaintiff originally alleged that her disability began January 1, 1996. (Tr. 81) SSI benefits are not payable for a period prior to the application. *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

pushing/pulling with the right lower extremity and allowed for a moderately decreased ability to maintain concentration, persistence and pace. (Tr. 13). He determined Plaintiff had no past relevant work. (Tr. 17). The ALJ correctly noted that, once Plaintiff was determined to have no past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that she could perform, given her residual functional capacity, age, education and past work. (Tr. 11). Based on the testimony of a vocational expert witness in response to a hypothetical question, the ALJ found that there were a significant number of jobs in the economy which Plaintiff could perform, notwithstanding her limitations, for example, addresser, checker and order clerk. (Tr. 17). Thus, the ALJ concluded Plaintiff was not disabled. (Tr. 18).

Plaintiff first argues that ALJ did not adequately consider her mental impairments in determining her residual functional capacity. (Br. 4-8). However, a review of the record reveals the ALJ considered her mental impairments at some length. (Tr. 12-13, 15-17). The ALJ did state incorrectly that there were no symptoms of obsessive compulsive disorder set forth in the records of Southeast Arkansas Behavioral Healthcare System, Inc. (Southeast). (Tr. 12). There are symptoms of obsessive compulsive disorder in those records. (Tr. 173, 176). Yet, a fair reading of the ALJ's opinion leads to a conclusion that he correctly determined there was no evidence that obsessive compulsive disorder would have had more than a minimal effect on her ability to work. (Tr. 12).

It appears that Plaintiff was seen at Southeast on November 13, 2007, for the first time in approximately four years. (Tr. 175). Medication and therapy were begun. *Id.* She told the doctor that she could not work because of arthritis, as opposed to mental illness. *Id.* By her next visit, December 26, 2007, her depression was "somewhat better." (Tr. 173). By February 13, 2008, she reported feeling "much better" than before. (Tr. 171). In March 2008 she reported "overall she [was] doing well." (Tr. 169). In May, mentally she felt "good." (Tr. 168). Substantial evidence supports a conclusion that her depression was amenable to treatment and did not meet the durational requirement.

Plaintiff also cites Listing 12.04[2] and argues her depressive disorder was a "severe" impairment requiring a finding that she was disabled. (Br. 7-8). That Listing reads as follows:

> 12.04  *Affective Disorders:*  Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
> A.  Medically documented persistence, either continuous or intermittent, of one of the following:
>    1.  Depressive syndrome characterized by at least four of the following:
>        a.  Anhedonia or pervasive loss of interest in almost all activities; or
>        b.  Appetite disturbance with change in weight; or
>        c.  Sleep disturbance; or
>        d.  Psychomotor agitation or retardation; or
>        e.  Decreased energy; or
>        f.  Feelings of guilt or worthlessness; or
>        g.  Difficulty concentrating or thinking; or
>        h.  Thoughts of suicide; or
>        i.  Hallucinations, delusions or paranoid thinking; or
>    2.  Manic syndrome characterized by at least three of the following:
>        a.  Hyperactivity; or
>        b.  Pressure of speech; or
>        c.  Flight of ideas; or
>        d.  Inflated self-esteem; or
>        e.  Decreased need for sleep; or
>        f.  Easy distractibility; or
>        g.  Involvement in activities that have a high probability of painful consequences which are not recognized; or
>        h.  Hallucinations, delusions or paranoid thinking;
> or
>    3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
> AND
> B.  Resulting in at least two of the following:
>    1.  Marked restriction of activities of daily living; or
>    2.  Marked difficulties in maintaining social functioning; or
>    3.  Marked difficulties in maintaining concentration, persistence, or pace; or
>    4.  Repeated episodes of decompensation, each of extended duration;
> OR
> C.  Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>    1.  Repeated episodes of decompensation, each of extended duration; or

---

[2]Plaintiff quotes an outdated version of 12.04.

        2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
        3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpart P, App. 1 (2008).

The ALJ found that Plaintiff's depression was a "severe" impairment. (Tr. 12). He specifically cited Listing 12.04. *Id.* He found, however, she did not meet the "paragraph B" criteria of 12.04. *Id.* He found she had no restriction in activities of daily living; no difficulties in social functioning; moderate difficulties with regard to concentration, persistence or pace and no episodes of decompensation[3] of extended duration. *Id.* As noted in the discussion above, substantial record evidence supports those conclusions.

Next, Plaintiff contends the ALJ substituted his opinion for the opinion of medical experts because he did not mention her GAF[4] scores in his opinion. (Br. 8-10). Plaintiff's argument overemphasizes the importance of GAF scores. The Commissioner has declined to endorse the use

---

[3]     4. *Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.
    The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C (2008).

[4] Global Assessment of Functioning. Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed., Text Revision 2000) (DSM-IV-TR). The GAF Scale is the fifth axis of the multiaxial assessment. *Id.* at 32. It measures psychological, social and occupational functioning. *Id.*

of the GAF Scale, noting that the GAF Scale did not have a direct correlation to the severity requirements in the mental disorder Listings. *See* 65 Fed. Reg. 50746, 50764-65 (August 21, 2000). Measuring mental impairments on a numerical scale is difficult. DSM-IV-TR cautions:

> DSM-IV is a classification of mental disorders that was developed for use in clinical, educational, and research settings. The diagnostic categories, criteria, and textual descriptions are meant to be employed by individuals with appropriate clinical training and experience in diagnosis. It is important that DSM-IV not be applied mechanically by untrained individuals. The specific diagnostic criteria included in DSM-IV are meant to serve as guidelines to be informed by clinical judgment and are not meant to be used in a cookbook fashion.

*Id.* xxxii.

The ALJ noted the mental health treatment Plaintiff received, but did not comment on the GAF scores. (Tr. 12-13, 15-17). That omission was not error. The GAF, by itself, does not rise to the level of a medical opinion that the ALJ must address. It is no more significant than any of the other axes of the multiaxial assessment. As noted in the discussion of Plaintiff's first argument, the ALJ adequately discussed her mental impairments and treatment, and his determinations are supported by substantial evidence.

Finally, Plaintiff argues the ALJ failed to develop the record regarding her documented mental impairment. (Br. 10-11). She fails to indicate, however, in what respect the record is insufficiently developed with regard to her mental impairment. Such a failure to flesh out an argument is waiver of the argument.

> [W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. As we recently said in a closely analogous context: "Judges are not expected to be mind[]readers. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace."

*United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), *cert. denied*, 494 U.S. 1082 (1992) (citations omitted); *accord, Rotskoff v. Cooley*, 438 F.3d 852, 854-55 (8th Cir. 2006) (issue deemed abandoned when not developed in brief); *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting out of hand conclusory assertion that ALJ failed to consider whether claimant met

Listings because claimant provided no analysis of relevant law or facts regarding Listings).

In any event, the Court has reviewed the record relative to Plaintiff's mental impairment and treatment. The ALJ is permitted to issue a decision without obtaining additional evidence as long as the record is sufficient to make an informed decision. *E.g., Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). In this instance, the record was sufficient upon which to make an informed decision. Plaintiff's argument to the contrary lacks merit.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final determination of the Commissioner be affirmed and that Plaintiff's complaint be dismissed with prejudice.

DATED this 3rd day of January, 2011.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE